**MANHATTAN TERRAZZO BRASS STRIP CO., INC., Plaintiff-Appellee, v A. BENZING & SONS, Defendants-Appellants.**

Ohio Appeals, 2nd District, Franklin County.

No. 3430. Decided January 15, 1943.

**354**

E. D. Howard, Columbus, and Angus Holmes, Columbus, for plaintiff-appellee.

L. C. Barker, Columbus, and George A. McGrath, Columbus, for defendants-appellants.

## OPINION

By GEIGER, P. J.

This matter is before this Court on appeal on questions of law from a judgment rendered in the ccurt below in favor of the appellee under date of September 22, 1941, and in which it is considered by the court that the plaintiff recover from the defendant $639.50 with interest.

The plaintiff-appellee brought suit to recover under the provision of a surety bond, Exhibit "A".

Briefly, the plaintiff states that it is a corporation, existing under the laws of New York; that the defendant, A. Benzing & Sons, is a corporation doing business under the firm name of Benzing & Sons of Hamilton; that on the 6th day of January defendants executed to the State of Ohio their joint and several obligation in the penal sum of $65,000.00 conditioned that, Whereas, the defendant as principal, filed with the state a proposal for the erection and completion of a certain building, that, in the event the proposal is accepted and the contract entered into, and that the defendant pay all lawful claims of material men for material furnished in carrying forward the contract, said undertaking being for the

benefit of all material men, the obligation shall be void; otherwise to remain in full force.

It is alleged that the contract was awarded to the defendants, and that after entry upon the work the defendants subcontracted the marble and tile work to the Wege Marble & Tile Company, which in turn subcontracted to the American Terrazzo, Incorporated, of Columbus, the terrazzo work. It is alleged that the defendants have failed to observe the obligation of the bond; that the plaintiff furnished certain material to the American Terrazzo Company for carrying forward and remodeling the dormitory at Miami University, consisting of certain brass strips of the total value of $639.50; that all of said material was delivered to the American Terrazzo Company in Columbus; that the Terrazzo Company used in said contract certain of the materials so furnished of the value of $224.64, and wholly without the knowledge of the plaintiff diverted the residue to other uses than in and for the dormitory, for which last named purposes all of said material was furnished to the American Terrazzo Company, Incorporated.

It is asserted that the American Terrazzo Company was adjudged a bankrupt, and that the plaintiff's material claim remains wholly unpaid and that there is due to it, $639.50. The attached bond is signed by A. Benzing & Sons and The Ohio Casualty Insurance Company, reciting, if the Benzing proposal is accepted and a contract entered into, which contract is made a part of the bond, and shall faithfully perform the conditions of said contract, and pay all lawful claims of subcontractors, material men and laborers, the obligation shall be void, otherwise, to remain in full force.

A motion to quash the service of summons was made on the ground that the court had no jurisdiction of the defendants. This motion to quash the service was overruled and exceptions noted.

A demurrer was thereupon filed to the petition on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer is based upon the ground that the petition fails to allege that the plaintiff served on the surety a statement of its claim within ninety days following the acceptance of the building. The demurrer was overruled. The matter of this demurrer was disposed of by the court below in a brief statement to the effect that it is an action against the principal on the bond. The notice required by §2365-3 GC is a necessary prerequisite to a suit against the surety, but is not a prerequisite to a suit against the principal. In another decision the court below stated:

"Clearly the statement required by **Section 2365-3** and the prohibition against suit until after sixty days after the furnishing thereof refer only to actions against the surety on the bond."

**Sections 2314-2366-2, GC,** apply to the transactions and the applicable sections therein must be construed together.

The defendant files an amended answer. The first defense admits all allegations of the petition except that relating to the plaintiff's engaging in business. As a second defense it is alleged that during two months in the years 1936 and 1937 the plaintiff operated its business in Ohio through its agent or factor, the Vulcan Copper and Supply Company in the city of Cincinnati; that during said period it maintained in the custody of said agent a stock of its merchandise of the kind and nature plaintiff claims to have sold to the American Terrazzo, Incorporated; that plaintiff is a New York corporation; that from such stock of plaintiff's merchandise so maintained in said warehouse the American Terrazzo, Inc., purchased through plaintiff's agent, The Vulcan Copper & Supply Company. certain materials used in carrying forward the work on the dormitory at Oxford, Ohio; that of the materials which were purchased from the plaintiff company and used in such construction by The American Terrazzo Company were by such purchaser contracted for through plaintiff's said agent in the city of Cincinnati and delivery was made to such person from the stock of merchandise so maintained in Cincinnati, which said material was delivered by said agent at the Oxford University in Butler County, Ohio; that plaintiff was never licensed to do business in Ohio.

For a third defense the defendant alleges that all of the plaintiff's merchandise used in carrying forward the remodeling of said dormitory was by said agent delivered to the purchaser, The American Terrazzo, Inc., at said north dormitory in Butler County, Ohio.

For a fourth defense, it is further alleged that The American Terrazzo Co. paid the plaintiff for all of plaintiff's merchandise or material which the American Terrazzo used in the construction of said dormitory; that the American Terrazzo Company paid to the plaintiff $156.35, which was in full of such portion of plaintiff's merchandise so used.

To this answer and its various defenses a reply is filed in which the plaintiff makes the following allegations in addition to those made in the petition, that it admits that during the years stated The Vulcan Copper Company of Cincinnati was plaintiff's factor, and that it carried on business independently of plaintiff; that plaintiff from time to time consigned merchandise and charged the same to said factor, which merchandise was in the control of said

factor; that plaintiff has at no time had merchandise in the state of Ohio except in the manner and under the conditions above set forth, and that it does business only by mail orders received at its office in New York City or through traveling salesmen; that any orders accepted by the plaintiff are filed for shipment directly from plaintiff's factory in New York and that it has no office in the state of Ohio.

Plaintiff says that about April 15, 1937, it constituted said factor its sole agent; that the orders for the goods to go into the dormitory were received by it or the factor in New York, and that all said merchandise was delivered to the American Terrazzo Co. in Columbus, Ohio, and the same were charged to The Vulcan Copper Company; that all such sales were isolated transactions and plaintiff denies that it was doing business in the state of Ohio. Other denials are made.

Certain motions were sustained and also a demurrer to certain allegations of the answer.

Notice of appeal was given to this court upon the alleged errors in the court's ruling as to the various motions and demurrers, but this court held that there was no final order or judgment and that, therefore, the court was without jurisdiction to determine the assignments of errors, in which the parties had asserted that the court below erred in passing upon preliminary matters. Afterwards, the matter was reduced to a final judgment from which appeal was taken.

The defendants-appellants assert four assignments of error:

(1) That the court erred in overruling the demurrer to the petition.

(2) Erred in sustaining plaintiff's demurrer to the second defense of the defendant's answer.

(3) That the judgment is contrary to law.

(4) That it should have been for the defendants and against the plaintiff.

We may not examine each of these assignments separately, but what we may say falls within the general scope of the assignments.

There is filed in this court a bill of exceptions together with an agreed statement of facts. There are certain pertinent matters in the agreed statement, which together with the exhibits largely make up the bill of exceptions.

## AGREED STATEMENT

It is stipulated in the agreed statement that the plaintiff is a corporation under the laws of New York, with its main office in

said state; that the defendant is a partnership with its main office in Hamilton, Butler County, Ohio; that the American Terrazzo Company was a corporation under the laws of Ohio with its principal place of business at 614 North High Street, Columbus, Ohio; that it became bankrupt and its affairs were wound up; that The Vulcan Copper & Supply Co. is a corporation with its principal office in Cincinnati; that the Wege Marble Company is a corporation with its principal place of business in Columbus; that the Miami University is located at Oxford and is owned and operated by the state of Ohio.

It is further agreed that a contract was entered into between Benzing, the contractors, and the State, for the building at the University, and that the contractors gave bond as provided by the statute; that the work was completed September 18, 1937, and accepted October 7, 1937. It is further agreed that as a part of the contract Benzing subcontracted for certain material, and that its subcontractor again sublet the contract to the American Terrazzo Company; that on the completion of the work Benzing & Sons paid the full amount of their contract with the Wege Marble Company, which company had paid the Terrazzo Company the amount due from it upon their subcontract.

It is agreed that the plaintiff sent out a circular letter, of which a copy is attached, mailed to the Terrazzo Company, Columbus, Ohio. Stipulations 16, 17, 18 and 19 are to the effect that the plaintiff delivered to The American Terrazzo Company at 614 North High Street, Columbus, certain specified items; that all of said material was delivered from the stock held by The Vulcan Copper & Supply Company in Cincinnati; that in June, 1927, said Copper Company delivered from such stock certain other material to be used in said structure, delivery being made at its storeroom in Cincinnati. By stipulation No 22 it is agreed that the plaintiff delivered to the Terrazzo Company at Columbus from its factory in New York certain material, and that at a later date other material was shipped direct from New York to the American Terrazzo Company.

The circular letter to which reference has been made was dated November 24, 1936, to the effect that the Manhattan Terrazzo Brass Strip Company, realizing that quick service is a valuable factor, had appointed the Vulcan Copper & Supply Company of Cincinnati, their agent, which company would carry complete stock of standard sizes of Manhattan strips, and that the customers will be now able to get over-night service at no additional cost. The circular states by having this stock "in your locality we become your stock room and you therefore do not have to tie up in capital any material for which you have no immediate need"; that if the customer is in a rush he may send directly to Cincinnati.

These agreed matters in the circular bear upon the question of whether the plaintiff was doing business in the state of Ohio.

As throwing further light upon the matter we can consider the testimony of the president of the company as contained in an attached deposition. Harry L. Fink states that he was the president; that his company transacted business in Ohio only through salesmen who solicit business, take and submit orders to the New York office; if the order is accepted "we ship the merchandise direct to the purchaser and bill it from the New York office". The statement of the president in his deposition may not be in harmony with the agreed statement of facts in every respect in connection with exhibits. We must determine from the examination of the agreed statement of facts and from the statement of the president whether the business done by the plaintiff constitutes "doing business in Ohio", or whether it is simply the ordinary dealing in interstate commerce. The pertinent sections on the chapter of foreign corporations begin with §8625, GC. **Section 8625-3 GC** enumerates corporations which are not subject to the act, stating that the sections shall not apply to "corporations engaged in this state solely in interstate commerce, nor to banks," etc.

**Section 8625-4** provides that no foreign corporation not excepted from the provisions of the act shall transact business in the state unless it shall hold an unexpired and uncancelled license so to do issued by the secretary of state.

If the business conducted in the state by the foreign corporation is simply that of a corporation shipping goods into Ohio in response to orders received from salesmen, then it would not be doing business in the state of Ohio. If, on the other hand. the operation of the corporation is such as to constitute doing business in the state of Ohio, then it can not bring the action in this case as it has done, because of the lack of the certificate.

The question as to whether or not the method by which the plaintiff transacted its business with the State of Ohio made it subject to the sections of the statute, §8625-4, providing, in substance, that no foreign corporation shall transact business in this state unless it shall hold an unexpired and uncancelled license, has given rise to very interesting briefs on each side of this controversy. The defendants urge, inasmuch as the plaintiff conducted its business in Ohio in the manner disclosed by the agreed statement of facts, that it must first secure the certificate. The plaintiff maintains, on the other hand, that its method of doing business in the state

of Ohio was simply interstate commerce. We believe we have set out enough in the recitation of the facts to disclose the issue between the parties without further detailing the claim of each as to the method in which the business was conducted, and we may address ourselves directly to the legal proposition as to what constitutes doing business in this state by a foreign corporation. This matter falls within the third assignment of error, that the judgment of the court is contrary to law and evidence and is prejudicial to the rights of the defendants.

Those wishing to pursue the case further in connection with the briefs will find the appellants' position set out and elaborated on, on page 8, et seq. of their brief. Appellants cite and comment upon Cheney Brothers Company v Commonwealth, 246 U. S. 147; Kansas City Steel Co. v Arkansas, 269 U. S. 148. Appellants also cite and comment upon **Short Films Syndicate Co. v Service Co., 39 Oh Ap 79.**

In their reply brief appellants further rely upon Reliance Fertilizer Co. v Davis, 169 So. 529; Lebanon Mills Co., Inc., v Kuhn, 261 N. Y. S. 172; Midland Linseed Products Co. v Warren Bros. Co. 46 Fed. (2d), 87; Dolton Adding Machine Sales Co. v Lindquist, et al., 242 Pac. 643; Armour Packing Co. v. Vinegar Bond Lbr. Co., 149 Ala. 205; City of Newport v Wagner, 168 Ky. 641; Jenks v Royal Baking Powder Co., 131 Minn. 335; Townsend on Corporations, 248.

Counsel also refers to a number of pertinent opinions written by the Attorney General of the state of Ohio, defining what would constitute doing business in the state of Ohio.

Counsel for plaintiff-appellee cites at length the testimony given in the deposition of Mr. Fink, president of the plaintiff, from which he presents the claim that the plaintiff was not doing business as a foreign corporation in the state and not subject to the statute. Plaintiff's counsel likewise refers to **Short Films Syndicate v Standard Films, 39 Oh Ap 79,** and cites numerous cases outside the state of Ohio, among them, Republic Steel Corp. v Atlas House-Wrecking Co., 113 S. W. (2d), 155; Anderson Bros. & Johnson Co. v Sioux Monument Co., 232 N. W. 689. He quotes, as embodying principles applicable to the case, from Fletcher, Enc. of Corporations, Vol. 17, Sec. 8411:

"The shipment of goods or a contract to ship goods by a foreign corporation to a factor or commission merchant in this state to be sold on commission is a transaction in interstate commerce and does not constitute doing business in the state and hence such foreign corporation in so doing is not amenable to the laws of the state imposing conditions upon which foreign corporations may do business within its borders * * *."

Counsel cites supporting cases:

International Fuel, etc., v Stearns, 155 Atl. 285 (109); John A. Dison Co. v Bryan, 5 S. W. (2d), 980, (124); Italy Cotton Oil Co. v Southern Cotton Oil Co., 13 S. W. (2d), 438, (125); Butler Bros. Shoe Co. v M. S. Rubber Co., 156 Fed. 1; Hogan v Intertype Corp., 136 Ark. 52; 206 S. W. 58; Butler Bros. Shoe Co. v U. S. Rubber Co., 156 Fed.; Marshall-Wells v Kramvich, 267 Pac. 611; Thomas Mfg. v Trade, 186 Ill. App., 248; Marshall Milling Co. v. Rosenblooth, 231 Ill. App. 235.

We have studied all the cases submitted by either side, not in minute detail, but so far as necessary to state the position we have taken. Between the conflicting authorities and the conflicting claims as to the method that the plaintiff pursued in securing and filling the orders for the material furnished by it, we arrive at the conclusion that the better considered cases are to the effect that under the conditions disclosed by the evidence, the plaintiff, a foreign corporation, was doing business in the state of Ohio, and is subject to the provisions of §8625-4.

Section 8625-25 provides for the penalties imposed upon a corporation doing business without a licence. This section provides:

"The failure of any corporation to obtain a license under the provisions of this act shall not impair or affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any of the courts of this state until it shall have obtained such license",

and pay to the secretary of state a penalty of $250.00. Although it is not involved in the case at bar, we point out that the statute provides that the contract shall not be impaired, but that no corporation which should have obtained the license shall maintain an action until it has obtained the license and paid the penalty.

The next important question that arises is whether or not this action may be maintained where the plaintiff has not given the notice required of a creditor under §2365-3. This statute provides that upon failure to give notice, "no suit shall be brought against the sureties on said bond," etc. The court below was of the opinion that this section did not apply in that the action was not against the surety but against the principal.

The question is of interest and not without difficulty. If one bringing such an action against the principal without joining the surety still falls within the provisions of this statute, then it would appear that under well considered cases such creditor was obliged

to give notice or fail in his action. The matter is discussed at length in **Indemnity Co. v Wassman, 120 Oh St 73.** It is there held that where the building is a school building, erected by the Board of Education, that the forwarding of a statement by the claimant to the clerk is not a compliance with §2365-3, and the court holds that notice to a clerk of the Board is not sufficient and states:

"Such statement should be furnished to the surety by the claimant or by his attorney."

On page 82 the court states "concededly the surety company at the time of the meeting of the school board on May 8th had an existing right conferred upon it by §2365-3 GC." That right was to have a statement furnished it by the material men within ninety days showing the amount due.

In **Western & Southern Indemnity Company v Chicago Title & Trust Co., 128 Oh St 422,** a bond similar to that given in the present case was under consideration. This case involved two sections, §2316 GC and §2365-3, GC, and the court had occasion to compare the two sections. **Section 2316** was passed on March 20, 1917, and §2365-3 was passed on March 21, 1917, and the court held that the one last passed, if inconsistent with the one first passed, would repeal by implication on the inconsistent provisions.

In **Atkinson et al. v Orr-Ault Construction Company, 124 Oh St 100,** an opinion by the court states:

"The court has reached the conclusion that §2365-3, GC, requiring one performing labor or furnishing material in the construction of a building to furnish the sureties on the bord of the principal contractor a statement of the amount due before suit may be brought upon such bond, is jurisdictional in character."

"In this case, it being conceded that no such statement was furnished, the demurrers to the petition for failure to show notice were rightly sustained by the court below." See also **National Surety Company v Mansfield Lumber Co., 32 Oh Ap 146.**

**Royal Indemnity Co. v State, 120 Oh St 378,** discusses in an interesting way the question as to whether the Legislature can require the contractor to give a bond not only for the proper performance of the work, but also that the contractor will pay all persons such sums as may be due them. The opinion is a learned discussion of all cases then extant in Ohio relating to the right of the Legislature to require contractors on public buildings to give bonds.

The same question is discussed at large in **Southern Surety Co.**

v Chambers, 115 Oh St 434, opinion by Allen, J., examining . the sections 2365-1 to 2365-4.

Royal Indemnity Co. v Day & Maddock Co., 114 Oh St 58, examines the same sections. The opinion, while interesting, has no direct bearing upon the question at bar.

While there is much controversy upon the question as to whether the notice must be given by one who brings an action against the principal and not against the sureties, we are inclined to the view that the requirement of the statute, definitely stating as it does that any person to whom any money shall be due * * * shall furnish the sureties on said bond a statement of the amount due to any such persons, is jurisdictional and that where the same has not been furnished no suit shall be brought.

In view of the uncertainty as to the correct determination of the question as to whether in the case at bar a notice is required before suit may be brought, for the present we refrain from passing finally upon that point, inasmuch as the view we have taken in reference to the doing business in Ohio is sufficient to dispose of this case.

We still have the question to be determined as to what recovery the plaintiff, if not otherwise restricted, is entitled to in this action. Plaintiff alleges that the total value of the material furnished was $639.50; that the Terrazzo Company used in said contract certain of the material furnished of the value of $224.64, and that it, wholly without the knowledge of the plaintiff, diverted the residue to other uses than in and for the dormitory.

The judgment of the court below was for the larger sum. In this we think there was error. The statute does not cover the price of goods **ordered,** but only the price of the goods **furnished.** The statute uses the expression, "performing such labor or furnishing such material", and the form of the bond provides that the surety shall pay all lawful claims of subcontractors, materialmen and laborers, "for labor performed and material furnished in the carrying forward and performing or completing said contract".

We arrive at the conclusion that the court below erred in not entering final judgment for defendant.

This being our conclusion the order of the court is that the petition of the plaintiff be dismissed.

BARNES, J., concurs.

HORNBECK, J. I concur in the judgment, but do not believe that §2365-3 GC has any application against the rights of the plaintiff to maintain its suit.

## APPLICATION FOR REHEARING